[No. 10265. Department Two. June 25, 1912.]

CARL E. HARKINS, *Respondent*, v. VENESS LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURIES—ASSUMPTION OF RISKS. An operator of a saw assumes the risk of dangers from the fact that no adequate means had been provided for stopping the saw when slivers should become lodged in it, as the defect was open and obvious; and also of the dangers incident to sawing cants cut from top logs, by reason of the greater prevalence of splinters in top logs, he having had notice of such fact without special warning thereof.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Upon a dispute in the evidence as to whether a special warning should have been given to a sawyer of the danger from attempting to remove wedged splinters with his hands, the question of his contributory negligence in so doing is for the jury.

SAME—CHOICE OF METHODS. In such a case, he is not guilty of contributory negligence in not adopting the safe way by having the mill shut down, when no method had been provided for his stopping the mill without leaving his post, and it is doubtful if that method of removing slivers was contemplated.

SAME—UNSAFE METHODS OF WORK—KNOWLEDGE. A sawyer is not chargeable with knowledge that the removal of wedged splinters with the hands is unsafe merely because he may know of other safe ways of doing it.

[1]Reported in 124 Pac. 492.

TRIAL—INSTRUCTIONS—ASSUMPTION OF FACTS. A requested in-' struction assuming facts as proven which were for the jury is properly refused.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered January 15, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a sawyer in a mill. Affirmed.

*Ballinger, Battle, Hulbert & Shorts* (*Wm. J. Claassen,* of counsel), for appellant.

*W. W. Langhorne* and *Hayden & Langhorne,* for respondent.

FULLERTON, J.—The appellant owns and operates a lumber mill, and the respondent was one of its employees, working as sawyer on the pony saw therein. The respondent was injured while engaged in the performance of his duties, and brought this action to recover therefor. He prevailed in the court below, and this appeal is from the judgment entered in his favor.

The evidence as to the cause of the accident and the manner in which it occurred is not in dispute. The pony saw on which the respondent was injured was used to cut into dimension lumber the cant timbers that were cut from logs by the main saw. On the day in question, a cant cut from a log called in the record a "top log," was shunted down for sawing from the main saw to the pony saw. Top logs have a particular significance to mill men. They are so called from the fact that they are cut from the tops of the trees from which they are taken, and are apt to be in a more or less shattered condition owing to the force with which they strike the ground when the trees are felled. This shattered condition renders them liable to give off splinters or slivers while being sawed, which catch in the teeth of the saw and are thrown off with more or less force, or are caught in the frame of the saw in such a manner as to rub the saw, causing it to heat from the friction thus produced. When

the respondent attempted to saw the cant in question, a sliver broke therefrom and became wedged between the saw and the saw guide. The appellant first sought to remove it by punching it out with a stick which was kept near the sawyer's position for that purpose; but being unable so to do, he procured a monkey wrench, which was also immediately at his hand, and loosened the tension of the guide, thinking the saw would force the sliver through; but finding that it did not, he reached over and took hold of it with his hand and attempted to pull it out. As he did so, the teeth of the saw caught the sliver, and jerked it through the guide with such suddenness and force that it brought his hand in contact with the saw, causing the injury of which he complains.

The respondent testified that, while he had worked in the appellant's sawmill off and on for a number of years, his actual experience as a sawyer did not extend over three months; that he had worked as a ratchet-setter at various times for short intervals for a year past, and during that time had observed the sawyer in the performance of his duties and thus acquired what knowledge he had of the workings of the pony saw; that no one had ever instructed him as to the proper method of removing a sliver that had caught in the guide, and that he first used a stick upon it, and then loosed the guide and attempted to pull the sliver out with his hands because he had seen other sawyers remove slivers in that way, and that he did not know there was any particular danger in so doing. He testified, also, that when he discovered that he could not remove the sliver with the stick, he sought to signal the head sawyer to shut down the mill, but was unable to attract his attention; testifying further, and in this he is corroborated by experienced sawyers, that when a sliver gets caught in such a way as to rub the saw and cause it to heat, the saw becomes dangerous, as the heat loosens the shanks which hold the teeth, thus letting them fly out, and causes the saw to become limber, increasing its tendency to bend and break into pieces.

It was shown that no provision had been made by which
the pony sawyer could signal from his post of duty for
shutting down the mill.   The signal cord was near the posi-
tion of the sawyer of the main saw, some forty or fifty feet
from the pony saw, and on the other side of a series of live
rolls.   It could be reached by the pony sawyer either by
crossing over the rolls, or by going around them, a consider-
able distance further.   The foreman of the mill testified that
no warning had been given the defendant of the danger of
attempting to remove a sliver caught in the guide of the saw
by the hand; testifying further in the same connection that
such an act was extremely dangerous, and that he had no
idea the respondent would attempt it, as he regarded the re-
spondent, owing to his long service around the mill, as an
experienced man, having knowledge of all the dangers con-
nected with the operation of the saw.   At the conclusion of
the case, the appellant challenged the sufficiency of the evi-
dence to sustain a verdict for the respondent, and the ruling
of the court denying the challenge constitutes the first error
assigned.   It is contended that no negligence on the part of
the appellant was shown which contributed to the respond-
ent's injury, but that, on the contrary it clearly appears that
the injury was the result of negligence and want of care on
the respondent's own part.   This contention we shall notice
first.

In his complaint, as grounds of negligence, the appellant
alleged, first, that the respondent had not furnished him
with a safe place within which to work; second, that it had
failed to warn him of the extra dangers and hazards as-
sumed by a sawyer in sawing top logs; and third, that it
had failed to instruct him as to the proper method of remov-
ing slivers caught between the saw and the saw guide, and
had failed to warn him of the danger of attempting to re-
move them by taking hold of them with the hand.   The
claim that the place of work was unsafe is founded on the
fact that no adequate means had been provided for stopping

the pony saw when slivers or splinters should become wedged between the saw and the frame in which it was operated; but this defect, if it was a defect at all, was open and obvious to the respondent when he began work upon the saw, and the rule is that he assumes, as a part of his contract of hire, the risk of injury from defects in his place of work which are open and obvious to him, or which can be discovered by the exercise of reasonable care on his part. So with the dangers incident to sawing cants cut from top logs; while there is no evidence that the respondent had been especially warned with reference thereto, we think his own evidence justifies the conclusion that he had knowledge of such dangers, acquired by observing the action of the saw when other sawyers were sawing such cants.

But with reference to the third ground of negligence, there was a direct conflict in the evidence. The respondent testifies positively that when he was put to work on the saw no instruction was given him as to the proper manner of removing slivers caught between the saw and the saw guide, and that no warning was given him of the dangers incident to removing them in the manner in which he attempted to remove the sliver at the time he was injured, and that he was not aware of the dangers; testifying when being questioned directly in reference thereto on cross-examination:

"Q. You knew that while that saw remained in motion, that while that sliver remained caught between the saw and the guide that there was danger from the saw to the attendants around there? A. Yes, sir. Q. You recognized the fact that that sliver had to be removed? A. Yes, sir, I did. Q. Did you realize that in attempting to remove a sliver of that nature that you was in danger of being injured? A. No, sir. Q. Did you not know, Mr. Harkins, from your experience from the time you have been there, that that was an unsafe method to go about releasing that sliver? A. No, sir. Q. You mean to state here to these gentlemen that you did not think that that was a dangerous thing to do? A. I had learned to do it that way, by seeing others do it and I never saw a man get hurt. Q. Do you

not, notwithstanding that fact, know that to release it in that way was a dangerous proceeding? A. No, sir, if I had I would not have done so. Q. Why did you think it wasn't? A. I thought the sliver was loose and I could take it out."

On the other hand, the appellant, while conceding that no such warning was given, sought to show that no special warning was necessary, owing to the respondent's long service in the mill and the knowledge he must have acquired by experience and observation during such time concerning the dangers to be encountered. Clearly there was here a conflict in the evidence whether or not the appellant was negligent in this regard, and this being so, the question was one for the jury, and their finding thereon is conclusive in this court.

But it is said that the evidence shows conclusively that the respondent was guilty of contributory negligence; that he attempted to remove the sliver with his hand while the saw was in motion when there was a safe method of removing the sliver, known to him, which he failed to adopt; thus having a choice of ways of doing a thing, one of which was safe and the other dangerous, he chose the dangerous way. The safe way to remove the sliver thought to have been open to the respondent was to cause the mill to be shut down and thus stop the saw, and remove the sliver while the saw was idle. But it can be doubted whether this method of removing slivers from the saw was contemplated by the respondent's employer. There was no preparation made for him to stop the mill. It was of course possible for the respondent by a number of ways to cause the mill to be shut down. He could signal the head sawyer and ask him to signal for the stopping of the mill; he could have gone to the bell cord himself by passing over the live rolls, or by passing around the head saw; and perhaps he could have signalled other employees and asked them to perform the service. But the best evidence that this was not contemplated is the fact

that no bell cord was put in reach of the pony sawyer himself. This could have been done at but a trifling expense; and it would seem that, had it been intended that the pony sawyer should stop the mill every time a sliver caught between the saw and the saw frame, some adequate and handy means of giving the signal to stop would have been put within his reach. There was, therefore, room for two opinions upon the question whether or not the respondent was guilty of contributory negligence in this respect, and this being so, the question was for the jury and not the court.

Exceptions were taken to a number of the instructions, some of which were given by the court at the request of the respondent and some upon the court's own motion. These exceptions, as we understand the respondent's argument, do not go to any inherent defect or error in the instructions themselves, but rather to their applicability under the evidence. But we do not find them faulty in this respect. There was evidence upon all the questions to which the instructions related, sufficient, we think, in each instance to warrant the court in submitting the question to the jury. As the instructions could be error only on a contrary view of the evidence, we hold that they were properly given.

The appellant requested the following instructions, each of which were refused by the court:

"The plaintiff is chargeable with the knowledge of the danger of removing 'slivers' from the saw with his hand, provided you find that he knew there were two other methods of removing such 'slivers' which were safe.

"By virtue of the duration and nature of plaintiff's employment in the defendant's mill in the various occupations in which he was from time to time engaged therein, you are instructed to find that he had knowledge that there were three different ways to remove slivers from the saw, two of which were safe, the other being dangerous, or if you find that he did not know that one was dangerous, and he preferred to use a method, which either he knew nothing about or which he knew to be dangerous, and so was injured, you are instructed that in either event he was guilty of con-

tributory negligence and your verdict should be in favor of the defendant."

These requested instructions were properly refused, because incorrect statements of the law. The first, because an employee is not chargeable with knowledge that a particular way of performing a duty pertaining to his employment is unsafe merely because he may know of two other ways of performing the duty which are safe.

The second is erroneous because it assumes facts as proven which were properly for the determination of the jury. Whether the defendant had knowledge that there were three different ways of removing the sliver, only two of which were safe, was in this case a disputed question of fact, and it would be error as of course for the court to assume that the respondent had knowledge that one of the ways was dangerous. Nor was there evidence that the respondent knew nothing about the way he adopted to remove the sliver. On the contrary, he testified that the way adopted was the one pursued by other sawyers from whom he learned the art of sawing, and he had no reason to believe that it possessed any peculiar dangers.

There was no error in the record, and the judgment will stand affirmed.

MOUNT, ELLIS, and MORRIS, JJ., concur.